MONCURF, P.,
delivered the opinion of the court.
This is a writ of error to a judgment of the Hustings court of the city of Richmond, rendered on the 21st day of November, 1874, convicting the plaintiff in error, John Dull, of grand larceny, and sentencing him therefor to confinement in the penitentiary for the term of three years; the period by the jurors in their verdict ascertained. Various errors are assigned in the judgment, which we will consider in the order of their assignment.
The first is, that the court erred in overruling the motion to quash the indictment.
The indictment charges the larceny of divers “notes of the national currency of the United States, the number and denomination of which are to the grand jurors unknown, for the pajunent of divers sums of money, in the whole amounting to the sum of five hundred and seventy dollars, and of the value of five hundred and seventy dollars, the property and notes of one Joseph M. Fowlkes,” &c.
It is argued'that this indictment charges no indictable offence, either at common law or under any statute of this State.
Certainly it charges no such offence at common law. Barceny could not, by the common law, be committed of written instruments, whether they related to real estate or concerned mere choses in action. 2 Russell on Crimes, p. 70.
Nor does it charge any such offence under any statute, unless it be under the act approved February 28th, 1874, entitled “An act to amend section 6, ^chapter 201, of the Code of 1873, with reference to larceny.” Acts of Assembly, page 65, chap. 69.
Prior to the passage of that act, to wit, in 1870, it had been decided by this court in Beftwich’s case, 20 Gratt. 716, that in an indictment for larceny, a description of the subject as “United States currency,” was not sufficient. Therefore on that ground, the indictment in that case was considered to be radically defective, and the judgment of the court below was reversed.
In consequence of that decision, the act aforesaid was passed, by which, among other things, it was enacted that, “in a prosecution for the larceny of United States currency,” “it shall be sufficient if the accused be proved guilty of the larceny of national bank notes, or United States treasury notes.”
An indictment for an offence committed since the passage of that act, charging the offence as a larceny of “United States currency,” does charge an indictable offence under that act.
The question therefore is, whether the indictment in this case is, in effect, an indictment for the larceny of United States currency?
It is certainly safer and better, in a prosecution for a statutory offence, to describe the offence in the indictment in the very language in which it is described in the statute. Commonwealth v. Peas, 4 Leigh 692; 2 Gratt. 629; same v. Hampton, 3 Gratt. 590; Howell’s case, 5 Id. 664; Young’s case, 15 Id. 664; Old’s case, 18 Id. 915; Cousin’s case, 19 Id. 807; and Taylor’s case, 20 Id. 825. But as was said by the court in the last named case, while “there are certain technical words of description of an offence which cannot be substituted by the use of other -words in an indictment; such as the words ‘feloniously,’ ‘bur-glariously,’ ” &c., *yet “descriptive words which are not of such technical character, though they generally better express their own meaning than any other words that can be used, may be substituted *637 by the use of sytion3rmous words, or words which plainly bring them within the meaning of the statute.” To the same effect are Young’s case and Old’s case, supra.
In this case the indictment charges a larceny of “divers notes of the national currency of the United States.” Is not that precisely the same, in meaning and effect, as a charge of a larceny of “United States currency”? We think that it is. “Currency of the United States,” is certainly the same thing as “United States currency.” The addition of the word “national” in the indictment can certainly make no difference. If it has no meaning at all it must be rejected as surplusage. If it has any meaning at all it can only refer to the “nation” of the United States, and currency of the nation of the United States, must mean currency of the United States.
There are two kinds of United States currency, both of which may properly be called national currency of the United States, one of which consists of treasury notes, (2 Brightley’s Dig. p. 167, title “currency,”) and the other of national bank notes. (Id. p. 56, title “banking.”) That both of these kinds of currency are embraced in the denomination of “United States currency, ’ ’ contained in the act before referred to, is shown by the act itself, which expressly declares that to sustain a charge of larceny of United States currency, “it shall be sufficient if the accused be proved guilty of the larceny of national bank notes, or United States treasury notes.” So that, whatever may be said of the strict accuracy of the language “United States currency,” as applied to both *of the descriptions of currency aforesaid, it must be regarded as perfectly accurate in a prosecution under the statute.
We are therefore of opinion that the Hustings court did not err in overruling the motion to quash the indictment.
The second assignment of error is, that the court erred in refusing to give to the jury instruction No. 1, as prayed for by the prisoner, and especially in giving the same with an addition made thereto by the court.
Instruction No. 1, as prayed for by the prisoner, is in these words: “That if the jury believe from the evidence that Robert Purdy, Dr. Bewis, or any other persons, at the house of accused, by the use of false pretences, obtained from one Joseph M. Fowlkes, the sum of live hundred and seventy dollars, the jury cannot find the accused guilty of the larceny alleged in the indictment, unless they are satisfied from the evidence, beyond all reasonable doubt, that the prisoner was present, aiding and abetting therein, or suffered or permitted the said persons so using the false pretence, to use the said house with knowledge that such persons intended to use said house for the employing of such fraudulent pretence. ”
The court refused to give that instruction as it stands, but gave it with an addition in these words: “But if the prisoner was within easy call, to aid or assist them in their purpose, or in escaping, or in getting rid of, or misleading the person from whom such money was obtained, that is a presence, aiding and abetting, and the prisoner is as guilty as if he were personally present.”
The court was certainly right in refusing to give the first instruction as asked for by the prisoner, for it might, and no doubt would, have misled the jury into *the belief that to make the prisoner guilty of the offence charged against him in the indictment, it was necessary that he should have been actually present at the commission of the same; whereas he might have been, and the evidence strongly-tended to prove that he was, guilty of the said offence as a principal in the second degree, by being constructively present and aiding and abetting in the commission of the same. “In order to render a person a principal in the second degree,” says Russell, “he must be present, aiding and abetting at the fact, or ready to afford assistance if necessary; but the presence need not be a strict, actual, immediate presence, such a presence as would make him an eye or earwitness of what passes, but may be a constructive presence. So that if several persons set out together, or in small parties, upon one common design, be it murder or other felony, or for any other purpose unlawful in itself, and each takes the part assigned him; some to commit the fact, others to watch at proper distances and stations, to prevent a surprise, or to favor, if need be, the escape of those who are more immediately engaged; they are all, provided the fact be committed, in the eyes of the law, present at it; for it was made a common cause with them, each man operated in his station at one and the same instant, towards the same common end, and the part each man took tended to give countenance, encouragement and protection to the whole gang, and to ensure the success of their common enterprise.” 1 Russell on Crimes pp. 26-7.
It was proper, therefore, that the court should qualify the instruction prayed for by prisoner, so as to refer to and explain this matter of constructive presence; and accordingly, the addition before mentioned was made thereto. We think that addition is free from *any just ground of exception, and cures the defect in the original instruction. We do not think that it was calculated to mislead the jury, as argued by the counsel for the plaintiff in error; nor that it treats him as a principal in the second degree, by proximity to the crime or principal in the crime, without regard to intent. It is certainly true, as argued by the learned counsel, that “presence alone is not sufficient to criminate;” and that “it must be with intent to aid in the crime.” But there is nothing in the addition, as we understand it, and as we think the jury must have understood it, which is inconsistent with that proposition. On the contrary, the addition affirms it. To supply the words, “to aid or assist them,” *638 used in the addition, at other places therein where they are necessarily understood, the addition will read thus: ‘ ‘But if the prisoner was within easy call, to aid or assist them in their purpose, or to aid or assist them in escaping1, or to aid or assist them in getting rid of or misleading the person from whom such money was obtained; that is a presence, aiding and abetting, and the prisoner is as guilty as if he were personally present.” Now what is the meaning of the words, ‘‘But if the prisoner was within easy call, to aid or assist them?” Clearly we must read them as if the words ‘‘with intent,” or “for the purpose,” were written before the words “to aid or assist them. ’ ’ We think this is perfectly plain if we read the 1 addition together with the original instruction of which it formed a part when given to the jury. The original instruction declared that the jury could not find the accused guilty of the larceny charged against him, unless they were satisfied that he was present aiding and abetting therein. But (continues the addition) if the prisoner was within easy call, to aid or assist them in their purpose, *&c., that is a presence aiding and abetting, and the prisoner is as guilty as if he were personally present. ’ ’
We are therefore of opinion, that the Hustings court did not err in regard to the said instruction, or the addition thereto.
The third assignment of error is, that the court erred in giving instruction No. 3, which was given on the motion of the attorney for the commonwealth, and is in these words: “If the jury believe from the evidence that the prisoner and others concerted and conspired together to induce, by false representations, the witness, Joseph M. Fowlkes, or any other persons who might De induced by such representations, to enter the house of the prisoner, and to obtain the money of sudh persons by false pretences, or rented his house to be used for such purpose by said conspirators, and that in pursuance of such concert, one of the prisoner’s confederates induced the witness, Joseph M. Fowlkes, to go into said house, and by false representations and pretences did obtain a large sum of money from said Joseph M. Fowlkes, and that the prisoner was present, or within easy call, to aid or assist them in their purpose, or in escaping, or in getting rid of or misleading the person from whom such money was obtained, then the prisoner is as guilty as if he himself had obtained the money from the said Joseph M. Fowlkes.”
Certainly the mere fact of renting a house to others to be used by them for the purpose of committing a felony therein would not make the landlord or lessor a principal, either in the first or second degree, in the felony when committed. But that fact is connected with a good many other facts in the instruction, which would clearly make the accused a principal in the *second degree in the felony charged against him. The same objection which was urged to the addition to instruction No. 1, was also urged to instruction No. 3, to wit: “that in defining constructive presence, constituting guilt, it wholly omits the essential of intent to aid in the crime. ’ ’ But that objection has already been fully answered, and the answer applies as well in the one case as the other.
The fourth assignment of error is, that the court erred in refusing to grant a new trial on the two grounds on which the motion therefor was founded, viz: 1st, the error of the court in giving and in refusing instructions to the jury as aforesaid; and 2dly, the error of the court in regard to the charge which was given to the jury.
In regard to the first ground: we have already shown that there was no error in that respect.
In regard to the other ground: the charge given by the clerk to 'the jury, by direction of the court, before the evidence was introduced to them, was in the ordinary form of such a charge in a case of larceny, and is in these words: “Your charge, therefore, is to enquire whether he be guilty of the larceny of which he stands indicted, or not guilty. If you find him guilty, you are further to enquire whether the goods and chattels stolen be of the value of fifty dollars or more; and if you find them to be of the value of fifty dollars or more, you are further to ascertain the term of his confinement in the penitentiary at not less than three nor more than ten years; and if you find the goods or chattels stolen to be of less value than fifty dollars, say so and no more; and if you find him not guilty, say so and no more. So hearken to the evidence. ’ ’
The learned counsel was right in arguing that this charge of the clerk was the act of the court; and if *there be any error in- it to the prejudice of the prisoner, it is an error for which the judgment ought to be reversed; as the case cited plainly shows. Allen v. Commonwealth, 2 Leigh 727.
The counsel admits that on the face of the indictment for larceny the charge was correct, the minimum imprisonment for larceny being three years.1 Code of 1873, p. 1196, $ 14. But the trial, he says, made the case a case, not of larceny, but of false pre-tences. And he contends that the two cases, of larceny and false pretences, are different from each other, at least in regard to punishment. He seems to admit that an indictment for larcen}”1, in the common form, is sufficient, though the case be one of false pretences; and that the charge to the jury may, in the first place, conform to the indictment. But he argues that if the trial, in other words, the evidence, make a case, not of larceny, but of false pretences, the charge ought to be changed in the course of the trial so as to suit the case thus newly made by the evidence. This, we think, would be a strange incongruity between the allegata and the probata, and would be an anomalous proceeding in a criminal case. •
The law having declared that ‘ ‘if a person *639 obtain, by any false pretence, or token from any person, with intent to defraud, money or other property which may be the subject of larceny, he shall be deemed guilty of the larceny thereof” (Code of 1873, ch. 188, 'i 24, p. 1197), has made the offence, to all intents and purposes, larceny; just as if the offender had feloniously stolen, taken and carried away the subject thus obtained by a false pretence or token. And the indictment and charge to the jury may be precisely in the same form in either case. And evidence that the subject was obtained by the accused by false pre-fence, *with intent to defraud, will sustain the indictment and be consistent with the charge.
This court has repeatedly declared, that an indictment in such a case may be in the ordinary form of an indictment for larceny at common law; and it seems to follow, as a matter of course, that proof of the offence described in the statute will sustain the indictment, and be consistent with a proper charge upon such an indictment. Dowdy’s case, 9 Gratt. 727; Leftwich’s case, 20 Id. 716.
The learned counsel argues, that the two offences, of larceny and obtaining property by false pretences, with intent to defraud, are punished differently and under different sections of the law; that the former is punished more severely, under ch. 188, $ 14, of the Code, which prescribes the punishment of grand larceny to be confinement in the penitentiary for not less than three nor more than ten years; and the latter is punished less severely, under section 24 of the same chapter of the Code, in which the only punishment prescribed is confinement in the penitentiary for not less than one nor more than five years; or, at the discretion of the jury, confinement in jail not more than one year, and a fine of five hundred dollars. He argues, that the punishment prescribed in the latter part of the latter section is not confined to the offence described in that part of the section, to wit: the offence of obtaining, by any false pre-tence or token, with intent to defraud, the signature of any person to a writing, the false making whereof would be forgery; but extends also to the offence described in the former part of the same section, to wit: the offence of obtaining, as aforesaid, money or other property which may be the subject of larceny: whereas that part of the section expressly declares that the offence thereby described *shall be deemed to be larceny ; after which the latter part of the section proceeds to declare how the offence therein described shall be punished. He argues, very ingeniously, that the 24th section aforesaid was taken from the 30th section of chapter 4 of what is called the Criminal Code; Acts of 1847-8, p. 103; which embraced both offences, and subjected them to the same punishment, to wit: the punishment prescribed by the latter part of the 24th section aforesaid; and that we ought not to infer an intention in the legislature to increase the punishment of the offence described in the former part of the 24th section unless such intention were more plainly manifested than is done by the words, “shall be deemed guilty of the larceny thereof,” inserted in that part of the section.
Now, we can imagine no other reason for inserting those words than to change the punishment of the offence described in the former part of the section, and make it the same with the punishment of larceny as prescribed by section 14 aforesaid. The counsel seems to suppose that the 24th section creates a peculiar kind of larceny, neither grand nor petit, nor punishable as other larcenies, but punishable only as prescribed in the latter part of that section, and without regard to the value of the subject obtained by false pretences, except so far as that consideration might influence the jury in ascertaining the punishment within the prescribed limits. If this be so, why did the legislature make any such change in the language of the section? Why did they not leave the offence as it was under the Criminal Code? The legislature would no doubt have made the offence described in the latter part of section 24 larceny also, if it had been, in its nature, capable of being so made. But a ' ^'person, in obtaining the signature of another to a writing, as mentioned in that part of the section, could not be said to be guilty of feloniously stealing, taking and carrying away the goods and chattels of another; and therefore the punishment of that offence was left as it had been before. The legislature, in declaring the offence of obtaining property by false pre-tences, described in the former part of section 24, larceny, only applied to that offence, the same principle which was applied to the offences described by sections 19, 20 and 21 of the same chapter of the Code, p. 1197, to wit: the offences of receiving stolen property, knowing it to have been stolen, and of embezzlement by officers or other persons. The principle had been applied to these latter offences by the Criminal Code of 1847-8; and the legislature, in section 24 aforesaid, only extended the same principle to a new case, to which it seemed to be equally applicable. In deciding all these offences to be larceny, they were of course to be grand or petit larceny, according to the value of the subject, as prescribed by section 14 as aforesaid.
But the Hustings court was of opinion that the evidence tended to prove an ordinary case of simple larceny, independently of section 24, and that the charge was proper on that ground also. We think this view of the court was also correct. The distinction between cases in which property, and cases in which the mere possession of property is fraudulently obtained from the owner by a person who converts the same to his own use, animo furandi, is well settled and familiar law. The offence in the latter being larceny, but not in the former. 2 Russell on Crimes, pp. 24 and 35. On page 45 several cases are referred to *640 which strongly resemble the one under consideration, according to the evidence; as, where it appeared *that the prisoner decoyed the prosecutor into a public house, and then introduced the play of cutting cards, and that one of them prevailed upon the prosecutor (who did not play on his own account), to cut the cards for him, and then, under pretence that the prosecutor had cut the cards for himself, and had lost, another of them swept his money off the table and went away'with it; it was considered to be one of those cases which should be left to the jury to determine, quo animo the money was obtained, and which would be felony, in case they should .find that the money was obtained upon the preconcerted plan to steal it. Rex v. Horne &c., 1 Leech, 270. So, if there is a plan to cheat a man' of his property under color of a bet, and he parts with the possession only to deposit as a stake with one of the confederates, the taking by such confederate is felonious. The prosecutor was drawn in to deposit twenty guinea notes on a bet that one of the prisoners could not guess right three times successively on the hiding of half a penny, by another of the prisoners, under a pot; he put the notes in the hands of one of the prisoners, and then the other guessing right, the notes were handed over. The question was left to the jury, whether, at the time the notes were taken, there was not a plan between the prisoners that they should be kept, under the false color of winning a bet, and the jury so found. Upon a case reserved, the judges (ten of them being present), held that the conviction was right, because, at the time of the taking, the prosecutor parted with the possession only. Russ. & Ry. 413.
Besides the two grounds relied on in support of the' motion for a new trial in the court below, an additional ground was relied on in this court, that if the plaintiff in error was guilty of any offence, it was no *more than a misdemeanor in cheating at a game, an offence declared by $ 10, of ch. 194 of the Code, p. 1214, and this is the subject of the fifth assignment of error in this case.
What we have already said to show that the offence which the evidence tends to prove is a larceny, is a sufficient answer to this assignment of error. If the offence be a larceny it cannot be a misdemeanor, the minor being merged in the major offence.
We are of opinion that there is no error in the judgment of the Hustings court, and that it ought to be affirmed.
Judgment affirmed.