## STATE OF WEST VIRGINIA *v.* HURST.

### Decided July 7th, 1877.

1877.
June Term.

The State
v.
Hurst.

1. In an indictment for obtaining money by false pretenses it is necessary to prove that the prosecutor was induced to part with his money by relying on the false pretenses of the prisoner; but the allegation in the indictment that the prisoner, by means of specified false pretenses, obtained such money is a sufficient allegation of these facts so required to be proven.

2. In such an indictment it is necessary to prove that the prisoner knew that the pretenses were false; but such knowledge is sufficiently alleged in the indictment by saying that the prisoner knowingly, designedly, falsely and feloniously pretended the matters of fact constituting the false pretenses, specifying them.

3. In such an indictment the same particularity is required in describing the property obtained by false pretenses, as in an indictment for larceny.

4. "Divers United States treasury notes and national bank notes and fractional currency notes amounting in the whole to $158.00 and of the value of $158 00," is a sufficient description of the property, without specifying the number of notes.

5. The procuring of the payment of a just debt, already due by false pretenses, does not make a person liable to such indictment.

6. The punishment for obtaining money by false pretenses is the same as that for larceny.

7. It is error for a court in the trial of a criminal cause, to make a remark to, or in the presence of the jury, in reference to matters of fact, which might in any degree influence them in their verdict.

Writ of error operating as a *supersedeas* to a judgment of the circuit court of Harrison county, rendered on the 8th day of June, 1877.

The writ was granted upon the petition of the defendant, Gilbert L. Hurst.

Hon. C. S. Lewis, late Judge of the second judicial circuit, presided below.

The following is a statement of the case furnished by GREEN, PRESIDENT, who delivered the opinion of the Court:

This is an indictment found on June 25, 1877, in the circuit court of Harrison county, against Gilbert L. Hurst, for obtaining money by false pretenses. The indictment contains five counts; the first four counts were substantially the same; they allege that Gilbert L. Hurst being possessed of a certain single bill, did, *knowingly*, designedly, falsely and feloniously, pretend to Benjamin R. Coffman, that there was then due on said single bill a certain sum, and did offer to transfer to said Coffman said single bill at a certain discount, and said Coffman took said single bill from him at this discount, *by means* of which said false pretenses, said Hurst did obtain from said Coffman divers United States notes and divers national bank notes, the denomination of which treasury notes and national bank notes were to the jurors unknown, amounting to $158.00, the money and property of said Coffman, with intent to defraud him, whereas, in truth and in fact, there was not due on the said single bill the sum pretended, but only a less sum, to-wit: $144.39. The first count concluded, that the jurors aforesaid thereupon say, that said Gilbert L. Hurst, the said $158.00 of the money and property of Coffman, feloniously did steal, take and carry away, against the peace and dignity of the State; the second, third and fourth counts conclude: "To the great damage and deception of said Benjamin R. Coffman, and against

the peace and dignity of the State." The fifth count is the common count for larceny, the money stolen being described just as it was described in the other counts. The defendant moved to quash this indictment, and each count thereof, which motion the court overruled; and the defendant then pleaded not guilty; and issue was joined. The jury found the prisoner guilty, as charged in the indictment, and fixed his term of imprisonment in the penitentiary at two years, and further recommended him to the Governor for mercy. The defendant then moved the court for a new trial on the ground that certain rulings of the court on the trial were erroneous; and the court overruled the motion, and pronounced sentence on the prisoner pursuant to the verdict of the jury, to which the defendant excepted. The first of the alleged erroneous rulings is set forth in the first bill of exceptions, and was the overruling of an instruction to the jury asked for by the defendant's counsel, as follows:

"If the jury believe from the evidence that the prisoner held and transferred to Benjamin R. Coffman the single bill as described in the first, second, third and fourth counts, or either of them, for the consideration therein stated, and that the said single bill, and the unpaid balance thereon, amounted at the time of said transfer to the sum as stated in any one of said four counts, and that the unpaid balance was available and valuable, and would be realized by Coffman, and the difference between the amount so paid and the amount so due on said single bill was less than $20.00, and that said Coffman had previously assigned said single bill to Amanda G. Hurst, wife of the prisoner, for a valuable consideration, and, as an inducement to get her to accept it, had agreed and promised her, that if Watkins did not promptly pay defendant said single bill, he (Coffman) would take it up, that they cannot find the prisoner guilty of felony, under any one of the counts of this indictment."

The other rulings of the court, are set forth in the

defendant's bills of exceptions, numbers two, three and four, which are as follows :

## BILL OF EXCEPTIONS No. 2.

Be it remembered, that upon the trial of this cause, after the jury had heard the evidence as stated in bill of exceptions No. 1, which is referred to as part of this bill of exceptions, and the arguments of counsel, and were about to retire to their chamber to consider of their verdict, the prosecuting attorney moved the court to give to the jury an instruction in the words and figures following, to-wit : "If the jury believe from the evidence, that the defendant, Gilbert L. Hurst, on the 28th day of December, 1876, had in his possession, as the property of his wife, Amanda G. Hurst, the single bill mentioned and described in the first four counts of the indictment, and that he, on said day, for the purpose of transferring the same to the witness, Benjamin R. Coffman, and, with intent to defraud, represented to him, said Coffman, that there was then due upon said obligation the sum of one hundred and ninety-seven dollars and sixty-eight cents ($197.68), and that, as a part of the means by which he sought to induce said Coffman so to believe, changed a credit indorsed upon said single bill or obligation from a credit of $250.00 to a credit of $200.00, and that by such representation the said Coffman was induced to take said obligation from said Hurst and paid him therefor the sum of $158.00, and in fact there was only the sum of $144.39 due upon said obligation, and the same was known to the said Hurst, the jury must find him guilty of taking the whole sum of $158.00, though said obligation was then worth $144.39.

## BILL OF EXCEPTIONS No. 3.

Be it remembered, that upon the trial of this cause, after the jury had heard the evidence, and arguments of counsel, and had retired to their chamber to consider of their verdict, and not being able to agree upon the same

they returned into court, and asked the court whether, if they believed from the evidence that the note or single bill in question was worth to Coffman $144.00, and that the prisoner had obtained from him, Coffman, $158.00 therefor, they could find a verdict for a misdemeanor for his (the prisoner's) obtaining by false pretenses the difference between the two sums, to-wit: $158.00 and $144.00, to which the court replied: " I will instruct the jury that if the jury believe from the evidence that the several allegations of the indictment in this cause are proven, the accused should be found guilty of obtaining the whole sum of $158.00 by the fraudulent means charged in said indictment, and should be punished as for grand larceny, by confinement in the penitentiary for not less than two nor more than ten years."

## BILL OF EXCEPTIONS No. 4.

Be it remembered, that the argument of counsel was concluded and the jury retired to consider of their verdict about 5 o'clock P. M., on the 7th day of this court, and after remaining in their room a short time returned into court without having agreed upon a verdict. Thereupon they were adjourned until the next day—8 o'clock A. M., at which time they were again sent to their rooms to further consider of their verdict. At the time for recess for the noon of this day, they were again sent for by the court, and adjourned till 1:30 o'clock P. M. Upon their coming into court after dinner, and being called, and again about to retire to their room to further consider of their verdict, and after the instructions had been asked for and refused to be given as stated in bills of exceptions numbers one, two and three, one of the said jurors remarked to the court, in the presence of the counsel for the State and the accused, and in the presence of the accused, and in the presence and hearing of the rest of the jury, that he, the said juryman, thought the jury could not agree. Whereupon the court responded to

the said juror in the same presence and hearing: " I see no reason why the jury cannot agree upon a verdict in this cause, " and again directed the jury to retire to their room and further consider of their verdict. To which remark of the court the prisoner excepts, and asks to have this, his exception, signed, sealed and recorded, which is accordingly done—there being no other evidence before the jury than that recited in bill of exceptions, No. 1, which is referred to as part of this bill of exceptions.

1877.
June Term.

The State
v.
Hurst

C. S. Lewis, [Seal.]

These rulings of the court, and the refusal to quash the indictment, and each count thereof, are assigned as errors. A motion in arrest of judgment was also made and overruled.

*E. Maxwell,* for defendant in below and plaintiff in error.

*John Bassell,* prosecuting attorney for Harrison county and the *Attorney General,* for the State.

Green, President, delivered the opinion of the Court:

The first four counts in the indictment in this case for obtaining money by false pretenses, it is insisted, should have been quashed on the defendant's motion : First— because to constitute this crime, it is indispensibly necessary that the prosecutor should have been induced to part with his money by relying on the false representations of the accused ; and that this should be alleged in the indictment. The language of the statute creating this offense is : "If a person obtains *by any false pretense,* or takes from any person with intent to defraud, money or other property, he shall be deemed guilty of the larceny thereof." Code of W. Va., ch. 145, §23.

If, therefore, the prosecutor was not induced to part with his money by the false pretenses of the accused, it is, from the very terms of the statute, clear that this crime has not been committed ; and it is equally clear that the indictment must allege, that the prosecutor

was induced by the false pretenses of the accused to part with his money, as every allegation essential to constitute the crime must be alleged in the indictment. The remaining inquiry is, whether there is such allegation in each of the first four counts of the indictment. After setting out the false pretenses of the accused, each of these four counts of the indictment alleges, " *by means* of which said false pretenses the said Gilbert L. Hurst did then and there feloniously obtain from said Benjamin R. Coffman this money," describing it. This is almost identically the language of the statute, " by false pretenses obtain money ;" and it means that "Benjamin R. Coffman was induced by said false pretenses to part with said money." There is not, however, as the counsel for the defendant insists, any necessity or even propriety in using this phrase in the indictment; on the contrary, the phrase which has been used to convey the same idea is more appropriate, being not only the form in which it is put in the statute which creates the offense, but also the form universally used, and the one prescribed in all the text books. See Archibald's Crim. Pl., ed. 1843, p 293; Chitty's Crim. Law, ed. 1847, p. 1005 ; Bishop's Crim. Proceedings, vol. 2, §162.

The counsel for the defendant, however, refers to several cases as sustaining his position that this essential element of this statutory offense should be alleged in a manner more direct than it is alleged in this indictment, or in any of the forms of indictment given by our best writers on criminal law. The cases referred to, I think, sustain no such position. In all of them it is true there was an allegation that by means of said false pretenses the accused obtained money or property, and the indictment was pronounced bad ; but not because of this allegation, for, as I understand these cases, in each of them the indictment would have been held bad, had they contained the most explicit and direct averment, that the prosecutor had been induced to part with his money by relying on the false pretenses of the accused. The difficulty in each of these cases was not in the form

in which this necessary allegation was made, but it lay in this, that the allegation, in the indictment did not show that the false pretenses had any connection with the prosecutor's parting with his money, and if the false pretenses alleged are of such a character that they could not have induced the prosecutor to part with his money, then the allegation, that he was so induced, would not make such an indictment good. This is all that can, I think, be fairly deduced from any of the cases cited by the defendant's counsel. They certainly do not give any countenance to the position that in all cases, or even ordinarily, it is necessary in respect to the matter under consideration to do more in an indictment for obtaining money by false pretenses, than to allege that *by means* of the false pretenses the money was obtained. I do not think that it can be fairly deduced from any of these decisions, that any of the courts who rendered them would have held that more than this was necessary in any case; though the court in some of them uses loose language that might countenance the idea, that more than this might be required to be alleged in some peculiar case. The cases to which I refer, are *Rex* v. *Reed*, 7 Car. & P., 849, (32 Eng. C. L., 904); *The State* v. *Orvis*, 13 Ind. R., 569 ; *Meshmeir* v. *The State*, 11 Ind., 481; *The State* v. *Green*, 7 Wis., 676.

The next reason urged for quashing the four first counts, is that in such an indictment it is absolutely necessary that a *scienter* should generally be stated, that is, that the defendant knew that his pretenses were false. Though our statute does not, like that of some other States, use the words "knowingly by" in defining this crime, yet there must generally be an allegation of the *scienter*. *Regina* v. *Philpotts*, 1 Car. & K., 112, (47 Eng. Com. L.) ; *Regina* v. *Henderson*, Car. & M., 328, (41 Eng. C. L., 183). In the case before us the *scienter* is expressly laid, all four counts alleging that the defendant " did *knowingly*, designedly, falsely and feloniously pretend, " &c. This is the form in which all the text writers in the forms given allege the *scienter* ; and in

the case above cited and in all others which I have seen where the indictments have been held bad on this account, there has been a total failure to allege the *scienter* in this or in any other way. We are referred to the case of *The State* v. *Smith*, 8 Blackf. R., p. 491, in which the court says: "That it appears to us that the indictment should have contained the allegation that Smith knew at the time he made the pretense, that it was false," but an examination of the indictment in that case shows, that it simply states, that the defendant unlawfully and falsely pretended, but does not state, that he *knowingly* and falsely pretended, as the indictment in the case before us does. In the case of the *Commonwealth* v. *Grove Hulburt*, 12 Metc., (Mass.) 446, the indictment said: "The defendant designedly and unlawfully did falsely pretend," omitting the word "knowingly." The indictment was nevertheless sustained. I think, therefore, there is no good objection to these first four counts, because of a failure to allege the *scienter*.

The next objection to the indictment is, that the description of the notes stolen or obtained by false pretenses is uncertain and insufficient. The description of them in all five counts is substantially the same; so that if this objection is valid, the whole indictment ought to have been quashed, for in an indictment for obtaining money or property by false pretenses, the money or property, which a person may be charged with having obtained by false pretenses, ought to be described in the indictment with the same particularity, which would be required in an indictment for the larceny thereof; *Leftwick's case*, 20 Gratt. 716. The money obtained or stolen by the defendant is thus described in the first and fifth counts, "divers United States treasury notes, and divers national bank notes, the denomination of which treasury notes and national bank notes were to the jurors unknown, amounting in the whole to the sum of $158.00, and of the value of $158.00, the money and property of the said Benjamin R. Coffman. And in the other three counts, the description is

the same, except that after "national bank notes" is added "and divers fractional currency notes of the United States." It is objected that there are, and never were, any notes whose legal name is " United States treasury notes." There is nothing in this objection, for notes being now a subject of larceny, need not be described with any more accuracy than other chattels, and they are only required to be described with such certainty as will enable the jury to decide whether the thing proved to have been stolen is the very same as that on which the indictment is founded, and show judicially to the court that it could have been the subject matter of the offense charged, and to enable the defendant to plead his acquittal or conviction to a subsequent indictment relating to the same thing. The description here " United States treasury notes," though it be not the legal name of these notes, is the name by which they are generally known, and fully answers the required degree of accuracy. It is the identical name by which these notes are described in an act of the Legislature of Virginia, passed February 26. 1874, Acts of Assembly, p 65, ch. 69. Surely under the rule above laid down as to the accuracy with which the property charged to be stolen should be described, a greater degree of technical accuracy would not be required than that shown by a Legislature in the enactment of criminal laws. The authorities cited below show that this description of these notes is sufficiently accurate.

But there is a much more serious difficulty as to the manner in which the money obtained by false pretenses, or stolen, is charged in all the counts of this indictment, that is the total failure to designate the number of the notes, or to allege as a reason for this failure that their number was unknown to the jury. Is this a fatal defect in this indictment ? It is certainly a general rule that in an indictment for stealing personal chattels, they should be described specifically by the names usually appropriate to them, and the number and value of each particular kind of goods should be stated. 2 Hale, 182.

And where a number of things are stolen, it is usually necessary to state the number with accuracy. See Archibald's Crim. Pr. & Pl. ed. 1853, p. 355-18, n. Are notes which circulate as currency an exception to the general rule, that the number of articles alleged to have been stolen, must bè specified in the indictment? The general rule has been applied to circulating notes by highly respectable authority. But in my judgment notes circulating as currency constitute, properly, an exception to the general rule that the number of articles stolen should be specified in an indictment, because circulating notes do not come within the reason which is the foundation of the rule, and the holding of them as such exception is sustained by the highest authority, as well as by reason: In an indictment for larceny the courts have never laid down any inflexible rule as to the description of the goods stolen, which rule was to be followed in all cases without regard to the reason of the rule and simply because it had been so determined by the decided cases as has been done in reference to other averments in indictments. A few examples of which may be given as illustrations. In an indictment for treason the words "treasonably, and against his allegiance" must be used; so in an indictment for murder the words "murder" and "of his malice aforethought" are indispensable; and so in an indictment for rape the word "ravish;" in an indictment for burglary the word "burglariously," and in an indictment for any felony the word "feloniously." In these cases no other words, nor any paraphrase whatever, would be equivalent to them, and indictments omitting them would be bad. But no such techinical accuracy has ever been required in describing the goods stolen in an indictment for larceny. The general principles governing the description of the goods stolen in such an indictment, as well as the reason for such rule is well expressed by Archer, Judge, in delivering the opinion of the court in the *State of Maryland* v. *Scribner*, 2 Gill. & Johns. R., p. 252, he says: "In all cases of larceny, very particular

description of the goods taken has never been considered necessary. This doctrine is founded in part, probably, on the fact that the prosecutor is not considered as in the possession of the articles stolen, and is not, therefore, able to give a minute and particular description. But in the case before the court (which was an indictment for being in the possession of unauthorized lottery tickets), the presumption of possession would be the reverse, and there would be no inability or difficulty to give a minute description or set out the instrument." Notes circulating as currency which have been stolen, not being presumed to be in the possession of the prosecutor, and it being from their nature, difficult, if not impossible, for the prosecutor to give as accurate and a minute description of them as he could give of other articles stolen from him, a less minute and accurate description of them has been permitted than of other articles stolen. For this reason the courts have been more liberal in permiting a general description of currency, either coin or circulating notes, than of other articles of stolen property. And the more modern the decision the greater the liberality in this respect. With reference to the number of the articles stolen, there is generally no difficulty in the prosecutors stating the number and it is, therefore, required that the number of the articles stolen should be specified in the indictment, but when the subject of the larceny is currency whether coin or circulating notes, it is generally very difficulty, and in many cases impossible, for the prosecutor to specify the number of pieces or number of notes stolen, and in this respect, applying the reason for permitting a more general description of currency stolen, the more modern decisions have exhibited a strong disposition to modify or dispense with the rule requiring the number of stolen articles to be specified in the indictment when the articles stolen were currency, either coin or circulating notes. Thus according to the weight of modern authorities a statement in the indictment that the number of the coin

or bank notes stolen were to the grand jurors unknown would dispense with the statement of their number, and render the indictment good. In *Haskins* v. *The People*, 16 N. Y., 344, the description of the stolen property, in the indictment, was "bank bills of banks, to the jurors unknown, and of a number and denomination to the jurors unknown, of the value of $600.00; silver coin current money of the State of New York, of a denomination to the jurors unknown, of the value of $50.00; gold coin, current money of the State of New York, of a denomination to the jurors unknown, of the value of $50.00." The question of the sufficiency of this description was raised by the prisoner's counsel, objecting to any inquiry into the amount and kind of bills, and of gold and silver coin, at the trial of the case, but his objection was overruled. Chief Justice Denio says : "The indictment was sufficient. When the substance of the offense is set out, the jurors may omit a matter of description which they cannot ascertain. If this were not so there would be a failure of justice. In the case of the stealing of a considerable body of bank notes or a quantity of coin, it would frequently, and perhaps generally, happen that the owner would not be able to specify the different kind of notes, or the various species of coin, the description of them as bank notes, and as gold or silver coin, together with a statement of the ownership, with an averment that a more particular description cannot be given, sufficiently identifies the offense, to guard the prisoner against the danger of another prosecution for the same crime." It will be particularly observed, that in describing the gold and silver coin in the indictment in this case, there is no averment that the number of these coins were, to the jurors, unknown, but only that the dnomination of them were to the jurors unknown, and in this respect it is precisely like the case we now have under consideration. The court of appeals of New York held that this description of the gold and silver coin was suffi-

cient, and if we follow this decision, the indictment in the case before us must be sustained. In the case of *The Commonwealth* v. *Stebbins*, 8 Gray 492, the supreme court of Massachusetts expressly decided that in an indictment for larceny neither the number or the denomination of bank notes stolen need be specified, nor need it be stated that their number or denomination were, to the jurors, unknown. The description of the notes in the indictment in that case was, "sundry bank bills, current within said commonwealth, amounting to the sum of $210.00, of the goods, chattels and money of one Patrick Dorsey." The court was unanimous in this decision, Chief Justice Shaw presiding. Before the rendition of this decision the court had frequently intimated this opinion. See *Larned* v. *Commonwealth*, 12 Metc., 245. And it had previously been decided that such a general description was sufficient, if the indictment contained an averment that the grand jury had not the means of describing the bank notes more particularly. See *Commonwealth* v. *Sawtell*, 11 Cush., 142, and *The Commonwealth* v. *Duffey*, 11 Cush., 145.

In *The Commonwealth* v. *Sawtell* the court says: "As to the larceny of silver coin, it has been a long and well settled practice in this commonwealth to charge it as a larceny of 'sundry pieces of silver coin, current in this commonwealth, amounting to the sum of —— dollars,' without describing the various particular coin." I can see no good reason why the number or particular description or denomination of bank notes should be regarded as essential, while the number and denomination of coin should not be. The reason for dispensing with this particularity in the one case is the same as in the other. One has no better knowledge of the number of the bank notes and fractional currency in his possession at any given time than he has of the number and denomination of the gold and silver coin in his possession. The spirit of these decisions has met the approbation of other courts; but I shall content myself with the citation of

one other only . In the case of *The State of Minnesota* v. *Taunt*, 16 Minn., 109,    the court held that an indictment for larceny was good, when the description of the property stolen was "sundry genuine and current treasury notes of different denominations, issued by the treasury department of the United States, and divers and sundry genuine and current bank notes, of different denominations, issued by different and sundry national banks, organized under the laws of the United States, all of which treasury and bank notes amounted to the sum of $250.00, and were of the value of $250.00, and were the property of one Joseph Smythyman; a more particular description of which treasury notes and bank notes, or any, or either of them, is to the said grand jury unknown." And Chief Justice Ripley, in an able opinion, indicates clearly that the indictment ought to be held sufficient, though there had not been in it the averment of an inability to give a more. particular description of the notes stolen. In this opinion he states that "the allegation 'that a more particular description of the articles stolen is unknown to the grand jury' is not traversable."

In the case of *The Commonwealth* v. *Sawtell*, 11 Cush., 142, the court says : "As to the objection of uncertainty in this indictment, and its effect in depriving the party of the privilege of pleading the same in bar of a second indictment, the objection is rather specious than real. The difficulties that are suggested under the present form of indictment would be likely to occur under the form admitted to be legal and proper. The number may be stated much larger than appears in proof, and yet no substantial variance. When the articles are of one class, or of the same kind, stating the number of articles aids little in identifying the particular offense charged. The second indictment may be for a smaller number, and, therefore, it may be necessary to resort to oral evidence to identify the larceny as the same that has been previously charged. If the previous indictment is general in

its statement, in such case, upon a plea of former conviction or acquittal being pleaded to a subsequent indictment, the case would be open to oral evidence to identify the larceny charged in the former case." As, therefore, the allegation in the indictment of a specific number of notes stolen, or the allegation that the number of notes stolen are unknown to the jury, seem more formal than substantial I the more readily, for the reasons above given, hold that neither of these allegations are necessary. The counsel for the defendant refers us to *Leftwich's case*, 20 Gratt., 716. There is nothing in this case inconsistent with the views above expressed. The property was, in the indictment in that case, described as " the sum of ninety dollars in United State currency, of the value of ninety dollars, of the property of said Montague." The court properly held this description insufficient as " United States currency," might be gold or silver, or treasury notes or bank notes. Moncure, President, says: " The indictment is too vague; it ought to show what kind of United States currency was obtained," but he does not say that it ought further to show the number of notes stolen. The indictment we have under consideration does show the kind of currency which was obtained. I am of opinion that the circuit court did not err in refusing to quash the indictment in this case or any of the counts. It is, therefore, unnecessary to consider, whether the verdict of the jury could have been sustained, if any one of the counts in the indictment had been fatally defective, or whether a conviction could have been based on the last count alone, if the other four had been fatally defective. These questions have been argued before this Court; but in the view I take of this case they are not fairly presented by the record, and are not therefore considered.

The next question which is presented for our consideration by the record is, did the court err in rejecting the first instruction asked by the defendant's counsel? The instruction is set forth at length in the statement of the

case, which I have prepared, and which is prefixed to this opinion as part of it. The first objection urged to this instruction is, that there was no evidence tending to prove the facts set forth in it, upon the belief of which by the jury the instruction is based. The bill of exceptions to the refusal to give this instruction sets forth the testimony in the case and shows distinctly, that there was evidence tending to prove all the facts, on the belief of which by the jury the instruction is based. The fact that Coffman had assigned the single bill to Amanda G. Hurst, wife of the prisoner, for a valuable consideration, and, as an inducement to get her to accept it, had agreed and promised her, that if the obligor, Watkins, did not promptly pay off the single bill, he (Coffman), would take it up, is the allegation supposed to be sustained by no evidence. It is true that Coffman denies this statement. But the truth of this statement is asserted by the witness, Mrs. James M. Plant, who was present when the note was transferred by Coffman; and James M. Plant, who wrote the assignment says, when it was written: " something was said about Coffman taking up the single bill, if Watkins did not pay it; and that his present opinion was, Coffman said he would pay it if Watkins did not. " This is certainly ample foundation for asking this instruction. The facts set forth hypothetically in this instruction : " That the unpaid balance of the assigned note was available and valuable, and would be realized by Coffman," though an undisputed fact, is one which I regard as totally immaterial, and the introduction of which into the instruction only tended to confuse it, and render difficult to comprehend the law point, which this instruction intended to present. The question intended to be presented by it is, that if when the bond of Watkins was transferred by Coffman, he (Coffman) was under a legal obligation to the transferee of the bond, to take up the bond and pay its amount, then that the difference between the amount he actually paid and the amount he was bound to pay, was all that

was obtained from him by false pretenses, and if this was less than $20.00, the defendant could not be convicted of felony. If the jury believe from the evidence, in the language of this instruction, " that Coffman had previously assigned the single bill to Amanda G. Hurst, wife of the prisoner, for a valuable consideration, and, as an inducement to get her to accept it, had agreed and promised her, that if Watkins did not promptly pay off said single bill, he (Coffman) would take it up," then such agreement and promise is binding on Coffman, whether due diligence to collect said single bill was or was not used by the transferee. The proposition of law designed to be submitted by this instruction is fairly presented. The truth or falsity of this proposition involves the question whether a person can be indicted for procuring money by false pretenses, who by false pretenses has induced another to pay him a debt already due. Bishop in his Crim. Law, vol. 2, §442, third ed. states the law to be, that an indictment in such a case will not lie. The oldest decision on this question, which I find is a case decided in 1836, by Coleridge, Judge, the case of *Rex* v. *Williams*, 7 Car. & Payne, p. 354 ; 32 Eng. C. L. R., p. 540. The prosecutor owed the prisoner's master a sum of money which he would not pay; the prisoner, to secure his master the means of paying, himself went to the prosecutor's wife and falsely pretended that his master had bought of her husband two sacks of malt and had sent him to fetch them away, and she, thereupon gave them to him, and he carried them to his master. Judge Coleridge charged the jury, " that if they were satisfied that the prisoner did not intend to defraud the prosecutor, but only to put it in his masters power to compel him to pay a just debt, it will be your duty to find him not guilty. It is not sufficient that the prisoner knowingly stated what was false and thereby obtained the malt. You must be satisfied that the prisoner intended at the time to defraud the prosecutor. " The case of *The Commonwealth* v. *Thompson*, reported

in the 3d Pa. Law Jour. and commented on in Lewis' U. S. Crim. Law, 197, is said in the case of *The Commonwealth* v. *Henry*, 10 Harris, (22 Pa. St. R., p. 256), to have been a case in which the prisoner by falsely pretending he had a warrant of arrest against the prosecutor procured the payment of an honest debt. It was held that he was not liable to be indicted for procuring money by false pretenses. This case is cited approvingly in the case of *The Commonwealth* v. *Henry*, and the court adds: " A false representation by which a man is cheated into the performance of a duty is not within the statute." In the case of *The People* v. *Thomas*, 3 Hill 169, the court in rendering its decision uses precisely, the same language as was used by the supreme court of Pennsylvania in the case of *The Commonwealth* v. *Henry*, though an examination of the case shows that the decision of this principle was not involved in the case before the court. These are the only decisions or *dicta* to which I have been referred, or which I have found bearing on the subject directly. Other cases have been relied on in which the question discussed was the criminal intent or absence of such intent in common law offenses; but they seem to me to throw but little light upon the subject. The true question involved is, what is the proper construction of the 23d section of chapter 145 of the Code of West Virginia. Its language is: " If a person obtain by any false pretenses from any person, with intent to defraud money, &c., he shall be deemed guilty of larceny." The words false pretenses used in this statute are very comprehensive, yet the court looking to the purposes of the Legislature have often held that every false representation or statement ought not to be held a false pretense and have put a limited meaning on these broad words which they have attempted to define with such accuracy as the nature of the case would permit. In the same spirit, I think, the words "with intent to defraud," should be interpreted. [It is doubtless immoral for a person by false pretenses to obtain the payment of a just debt.

The end sought may be just, but such end will not, by a correct code of morals, justify the use of improper means; but the law does not, in many instances, attempt the enforcement of good morals, and the question is, whether the use of false pretenses to obtain a claim justly due, is within the true meaning of this criminal statute, a fraud. To so construe this statute, would, in my judgment, consign to the penitentiary as thieves many persons who cannot be classed with common thieves, without breaking down all our ideas of distinctions in degrees of immorality. I think, therefore, that within the true meaning of this statute, a man cannot be held guilty of procuring money by false pretenses, with intent to defraud, who has merely collected a debt justly due him, though in making the collection he has used false pretenses.] The authorities I have cited, though not entitled to much weight in themselves, sustain this view; and I have seen no authority which sustains the contrary view. I think, therefore, the circuit court erred in rejecting the first instruction offered by the defendant; it might very properly have been so modified in its language as to express the idea it intended to convey in a clearer manner. The instruction set forth in the second bill of exceptions, should have been modified by the court by adding at the end thereof, these words: "But if the jury further believe from the evidence, that said Coffman had previously assigned said obligation to Amanda G. Hurst, wife of the prisoner, for a valuable consideration, and, as an inducement to get her to accept it, had agreed and promised her that if Watkins did not pay her he (Coffman) would take it up; this would negative the idea of an intent to defraud Coffman, so far as the procuring of $144.39, the amount of said obligation was concerned, and they should find him guilty of taking only $13.61." The next question is, did the circuit court err in giving the instruction set forth in the third bill of exceptions? The defendant's counsel insists that though the first part of §23 of ch.

145 of Code of W. Va. declares that a person obtaining money by false pretenses shall be deemed guilty of larceny, yet the punishment of this offense is not that prescibed by the Code for larceny, but is the punishment named in the latter part of this section, that is, confinement in the penitentiary for not less than one or more than five years, or, at the discretion of the jury, confinement in the jail not more than one year, and fine not exceeding $500.00; and that the court erred in declaring the punishment of this crime, in any case, as confinement for not less than two, nor more than ten years in the penitentiary. There was clearly no error in this part of tbe instruction. The court of appeals of Virginia considered this question maturely in *Dill's case*, 25 Gratt., 965, and decided that the obtaining money under false pretenses, is by this statute made larceny, and that the penalty of the offense is the same as in other cases of larceny. I fully concur in the elaborate opinion of Judge Moncure in that case on this point. See pages 99 81-4. The court, however, erred in not responding directly to the inquiry of the jury, by giving them substantially the instruction contained in bill of exceptions number two, with the modification thereof as above indicated. While the instruction contained in the third bill of exceptions, is not positively erroneous, yet given under the circumstances detailed in this exception, it was calculated to mislead the jury.

The prisoner's fourth bill of exception presents the question, whether it was error for the court to make to the juror in the presence of the jury the remark complained of. It appears from the bill of exceptions, that after the argument of counsel was concluded the jury retired to consider of their verdict, about 5 o'clock P. M., on the 7th day of the term of the court, and after remaining a short time in their room, returned into court without having agreed upon their verdict. Thereupon they were adjourned until the next day at 8 o'clock A. M., at which time they were again sent to their room

to further consider of their verdict. At the time for the noon recess they were sent for by the court and adjourned to 1:30 o'clock P. M. After their coming into court after dinner, and being called and again about to retire to their room to further consider of their verdict, and after the instruction had been given and refused, as stated in bills of exceptions numbers one, two and three, one of the said jurors remarked to the court, in the presence and hearing of the counsel for the State, and the accused, and in the presence of the accused, and in the presence and hearing of the rest of the jury, that he, the said juryman, thought the jury could not agree. Whereupon the court responded to the said juror, in the same presence and hearing : "I see no reason why the jury cannot agree upon a verdict in this case," and again directed the jury to retire to their room, and further consider of their verdict.

In Virginia the courts have always guarded with jealous care the province of the jury. In *Ross* v. *Gill and wife*, 1 Wash., 88, President Pendleton, said : " If the question depends upon the weight of testimony, the jury, and not the court are exclusively and uncontrollably the judge." In *Keel & Roberts* v. *Hubert*, 1 Wash., 203, the court below having instructed the jury that, " the evidence produced by the plaintiff was good and effectual in law to maintain the issue on his part, " the court said : " The dictrict court most certainly did wrong in directing the jury, that the evidence *was sufficient* to maintain the issue."

In the case of *Gregory* v. *Baugh*, 2 Leigh. 665, the circuit court having in a charge or instruction to the jury, stated matters as being in a written deposition and instructed the jury that that matter was legal evidence when, in fact, no such matter was in the deposition, it was held, that this was calculated to mislead the jury, and was error, for which the verdict should be set aside and the judgment reversed. The court, consisting of four judges, were unanimous in this decree. It was argued with great force, that in was impossible that the charge

could have deceived or mislead the jury. The deposi-
tions were before the jury, the cause turned chiefly on
them, they were doubtless the subject of minute exami-
nation and discussion at the bar, and it was to be pre-
sumed, that they were carried by the jury from the bar
into the jury room and read there and considered. "It
was said," answered Judge Carr, to this argument, that
"the jury would read the affidavit for themselves and
not take the court's version of it. This they *might*
do* as in any other case where the court undertook to
to instruct them on the *weight* or *effect* of evidence.
They might disregard such an instruction, yet it would
be error in the court to give it." Judge Green said:
"The instructions were calculated to mislead the jury,
more or less, by inducing them to believe, that the court
was of opinion that such was the effect of the deposi-
tion." Judge Cabell concurred with Judge Green. And
Judge Brooke said: "The objection to the instruction is
not obviated (as was argued by counsel) by the circum-
stance that the evidence was in writing and would be seen
by the jury, who might correct the mistake of the Judge."
In that case the mistake was, as to a mere matter of fact,
and could have been corrected by merely reading the
deposition, which it was the duty of the jury to do, and
which, therefore, they probably did, and yet because they
*may have been misled* by the statement of the court, the
judgment was reversed. In this case the court weighed
the evidence and pronounced an opinion upon it, and
the errors, if any, could not be so easily corrected. It is
the ordinary case of an opinion as to the weight, effect
or sufficiency of evidence submitted to a jury, which is a
good ground for reversal of a judgment according to all
the authorities. Such an opinion is certainly calculated
to mislead them, whether it be communicated to them
in the form of an instruction, or be *merely expressed by
the court in their presence in the progress of the trial.* In
either case they are authentically informed of the opinion;
and it must have an influence upon their judgments,

probably as much in the one case as the other, but whether the same, or more, or less, the principle involved is not affected." Moncure, Judge, in *McDowell ex'rs* v. *Crawford*, 11 Gratt., 405. In the case just cited Judge Moncure, quotes approvingly from 1 Rob. Pr., 338, 344, where the cases are collected, and as the result of a review of the cases the author says: " They evince a jealous care to watch over and protect the legitimate powers of the jury. They show that the court must be very careful not to overstep the line, which separates law from fact. They establish the doctrine that where the evidence is *parol*, any opinion as to the *weight*, *effect* or *sufficiency* of the evidence submitted to the jury, any assumption of a fact as *proved*, or even an intimation that written evidence states matters, which it does not state, will be an invasion of the province of the jury."

The authorities cited were all in civil cases. There is, and ought to be, a distinction between the trial of civil and criminal cases in many important particulars.

There is a great difference as to the quantity of evidence necessary in the two classes of cases. In a civil case, the plaintiff should prevail, if the weight of evidence preponderates in his favor; but in a criminal case it is necessary that the evidence shall be sufficient to remove every reasonable doubt of the prisoner's guilt. In civil cases the losing party may appeal, or obtain a writ of error; but in a criminal prosecution, the verdict of not guilty is final and irrevocable, and a judgment in favor of the accused must be rendered thereon. In a civil case, it is in the power of the parties by a demurrer to the evidence, to take from the jury the whole evidence, and submit the case to the court; but in a criminal case, the state cannot demur to the evidence and compel the defendant to join therein, the prisoner has the right to have the jury pass upon the evidence, and that right cannot be taken from him. In a civil case, the jury must recieve the law from the court if it is given; in a criminal case, the jury are judges of the

law as well as of the fact. *Doss's case*, 1 Gratt. 559. In a civil case, if there seems to be no prospect of the jury agreeing, the Judge may discharge the jury, even without the consent of the parties ; but in a criminal case, the jury cannot be discharged without the consent of the prisoner, merely because the court is of opinion that the jury will not be able to agree as long as the court is in session and if it be discharged it has been held, the prisoner is entitled to his discharge. *Williams's case*, 2 Gratt. 568. If the province of the jury should be guarded with jealous care in a civil case, much more, and for stronger reasons, should it be watched, guarded and protected in a criminal case. If the province of the jury in a criminal case may be allowed to be invaded, the liberty and lives of the citizens would not be safe. In times of peril, when commotions in the State exist, untrammeled jury trials are the greatest safeguard of the citizen. If in a civil case, it is error for which the verdict should be set aside and the judgment reversed, for the court to make a remark in the presence of the jury calculated to mislead them, or calculated to cause them to give more or less weight to any testimony before them, for much stronger reason, would it be error to make the same remark in the trial of a criminal case. Was the remark made by the Judge in this case calculated to mislead the jury, or to indicate the opinion of the Judge in such a way as to have the probable effect of influencing the jury in their verdict ? The jury had been out for some time considering their verdict, and some time before the verdict was rendered, came into court, and asked the court for an instruction which clearly indicated that they were inclined to find the prisoner guilty, if not of the felony, at least of a misdemeanor. The court had before instructed them, that "they must regard the prisoner innocent until the contrary is proven beyond a reasonable doubt." It is probable that some of the jury had such doubt, and when the court, to whom the jurors properly look with confidence, told them he saw no reason why

they could not agree in the case, it would not be strange if that remark would have more potency in solving their doubts than anything else in the case. They might well say, that "if the court saw no reason why they should not agree, why should they have any such reason?" We think the remark was, under the circumstances, well calculated to influence the jury, and indicate to them, that in the opinion of the court, the case was free from doubt; and well calculated to remove any doubt that might be in the minds of any of the jury; and should not have been made; and was an error of which the prisoner might well complain.

For the reasons above stated the circuit court did not err in refusing to arrest the judgment; but a new trial should have been awarded the defendant on his motion.

Wherefore, for the error of the said circuit court in overruling the motion of the accused for a new trial, and for the other errors specified in this opinion, it seemeth to this Court, that the judgment rendered by said circuit court in this case is erroneous. Therefore it is considered, that the same be reversed and annulled, and it is ordered, that the verdict rendered by the jury be set aside, and that the cause be remanded to the said circuit court of Harrison county with direction to proceed in the manner prescribed by law to cause another jury, duly qualified, to come and to say whether the said Gilbert L. Hurst, be guilty of the felony wherewith he stands accused, in the said indictment mentioned, or not guilty, and further proceed according to the principles settled in the foregoing opinion, and as the law requires.

JUDGMENT REVERSED, verdict set aside and case remanded